UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CORNELIUS LEMONT HINES, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:22-CV-425-DRL-MGG |
| SHERRI FRITTER *et al.*, | |
| Defendants. | |

OPINION AND ORDER

Cornelius LeMont Hines, a prisoner without a lawyer, filed two complaints against eight defendants in which he alleges he is not receiving adequate medical care for his chronic seizure disorder. ECF 1; 1-1. He has also filed three motions for a preliminary injunction and an amended motion for a preliminary injunction. ECF 3, 4, 10, 11. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Hines, who is housed at the Indiana State Prison (ISP), alleges that on March 6, 2022, he was moved from general population to D-Cell House, a segregated housing

unit, at ISP.[1] ECF 1-1 at 4. He states he suffers from severe and violent epileptic seizures, but he does not take seizure medication because the side effects from the medication interfere with his everyday life. *Id*. at 4, 8.

After he was moved to D-Cell House, he had three seizures and had to go to the hospital to be treated for two of them. *Id*. at 5. Mr. Hines states he busted his face, got a knot on his head, and bit his lip, cheek, and tongue, and sustained other injuries because he did not have his seizure helmet and mouthguard. *Id*. He had previously been given a seizure helmet and mouthguard, but when he was moved to D-Cell House, his medical equipment was missing from his property. *Id*. at 4.

Mr. Hines alleges that Sgt. M. Alicea, the officer who packed his property for his move to D-Cell House, did not pack his seizure helmet and mouthguard even though Sgt. Alicea knew about his chronic seizure disorder. *Id*. at 5. Because these items were missing from his property, Mr. Hines asked Sgt. D. Bass, the shift supervisor, to find them. *Id*. Sgt. Bass told Mr. Hines he would locate the items and return them to Mr. Hines before his shift ended, but he failed to do so. *Id*. at 4-5. Mr. Hines filed a grievance on March 8, 2022, because his equipment had not been returned to him, but the grievance was denied.

---

[1] Mr. Hines filed an eight-page complaint and a nearly identical 12-page complaint in different handwriting with the court at the same time. ECF 1; ECF 1-1. They are both signed and dated at 10:34 a.m. on May 25, 2022. It is unclear why Mr. Hines filed two nearly identical complaints at the same time. Nevertheless, the court has reviewed both documents and because there are no material differences between them, the court will reference docket entry 1-1 in this order as it is more legible.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted). A mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical malpractice. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994) ("Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth

3

Amendment."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (Negligence or medical malpractice do not constitute deliberate indifference). Even incompetence does not state a claim for deliberate indifference. *Minix v. Canarecci*, 597 F.3d 824, 831-32 (7th Cir. 2010). Furthermore, inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To the extent Mr. Hines claims Sgt. Alicea was deliberately indifferent to his serious medical needs because he did not pack his seizure helmet and mouthguard when he moved to D-Cell House on March 6, 2022, he has not stated an Eighth Amendment claim against Sgt. Alicea. The complaint does not contain facts from which it can be plausibly inferred that Sgt. Alicea was anything more than negligent in performing his duties when he failed to pack Mr. Hines's medical equipment. Additionally, to the extent Mr. Hines asserts Sgt. Bass was deliberately indifferent to his serious medical needs because he did not locate Mr. Hines's medical equipment by the end of his shift on March 6, 2022, he has not stated an Eighth Amendment claim against Sgt. Bass. Without more facts, the court cannot conclude that Sgt. Bass's actions amounted to anything more than negligence. Mr. Hines has not stated claims against either of these defendants.

On March 10, 2022 and March 14, 2022, Mr. Hines wrote to D. Hawkins, ISP's property officer, about locating his seizure helmet and mouthguard. ECF 1-1 at 5-6. He states that even though Mr. Hawkins did not respond to his letters, on March 22, 2022, Mr. Hawkins returned his seizure helmet and mouthguard to him. *Id.* at 6. While Mr. Hines alleges Mr. Hawkins was deliberately indifferent to his serious medical needs because it took about two weeks for Mr. Hawkins to return his medical equipment,

4

without additional facts, the court cannot conclude that the delay in returning Mr. Hines's medical equipment amounts to deliberate indifference. He has not stated a claim against Mr. Hawkins.

Mr. Hines also asserts that Heath Services Administrator Sherri Fritter, Dr. Nancy Marthakis, Director of Nursing Lacy Gorske, and Nurse Practitioner Diane Thew knew about his chronic seizure disorder but did nothing to help locate his medical equipment after he moved to D-Cell House on March 6, 2022. ECF 1-1 at 6. While his allegations are somewhat vague and difficult to discern, he seems to allege that these defendants were aware of his medical condition because, at some point, he reported his medical equipment had been misplaced during a prison shakedown. *Id*. However, Mr. Hines's allegations that his medical equipment was misplaced during a shakedown are not related to his allegations that his medical equipment was misplaced when he moved to D-Cell House on March 6, 2022. Therefore, Mr. Hines may not proceed against these defendants.

Mr. Hines further asserts that after his transfer to D-Cell House, he asked Director of Nursing Lacy Gorske about the location of his medical equipment. ECF 1-1 at 7. He avers she was deliberately indifferent to his serious medical needs because she did nothing to help locate his equipment even though she knew his condition caused him to have severe injuries. *Id*. Some of his injuries included having bloody noses, bleeding from his mouth from biting his cheek, lip, tongue, and bleeding teeth from grinding, smacking the wall or hitting the floor. *Id*. However, without additional facts, the court cannot

5

conclude that Director of Nursing Gorske's inaction amounted to anything other than negligence.

Mr. Hines has also sued Warden Ron Neal. ECF 1-1 at 7-8. He alleges he wrote to Warden Neal four times after he was transferred to D-Cell House, but he never received a response. *Id.* at 8. Mr. Hines asserts he informed Warden Neal that he is in a dangerous situation because prison officers assigned to D-Cell House do not perform security checks on time or at all. *Id.* In his view, his situation is dangerous because if he were to have a seizure and hit his head on the toilet, wall, or floor, he could die or be severely injured because no one would know. *Id.* Mr. Hines alleges that, on one occasion, he stood at his cell door for two and one-half hours to try to get someone's attention so he could get help. *Id.* He believes he should be moved to general population so that his medical needs can be addressed promptly.

Section 1983 "liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. The doctrine of *respondeat superior*, which allows an employer to be held liable for subordinates' actions in some types of cases, has no application to § 1983 actions. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). "'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). As the Seventh Circuit explained in *Burks*:

6

> The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks*, 555 F.3d at 595. Personal liability requires more than allegations that the defendant is a supervisor or that the defendant knew of the plaintiff's complaints. Thus, Mr. Hines may not proceed against Warden Neal in his individual capacity.

However, Warden Neal has both the authority and the responsibility to ensure that inmates are provided constitutionally adequate medical treatment as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out."). Therefore, Mr. Hines will be allowed to proceed against Warden Neal in his official capacity as the Warden of the Indiana State Prison for permanent injunctive relief.

Finally, Mr. Hines has filed three motions for preliminary injunction and one amended motion for preliminary injunction. ECF 3, 4, 10, 11. The court's review of the four motions shows that they contain essentially the same allegations and there are no material differences between them. The court will thus deny as moot the three motions

7

for a preliminary injunction (ECF 3, 4, 11) and discuss the allegations contained in the amended motion for a preliminary injunction (ECF 10).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In his amended motion for a preliminary injunction, Mr. Hines seeks injunctive relief in the form of being moved from D-Cell House to general population because his chronic seizures are uncontrollable, can occur at any moment, and prison staff do not know when he is having a seizure. ECF 10 at 4. He asserts he has no disciplinary or segregated time left to serve and he is being housed in D-Cell House for no reason. *Id*. Mr. Hines avers he is in imminent harm because he cannot get immediate treatment for his chronic seizure disorder in D-Cell House because prison officers infrequently make security checks or do not make them at all. *Id*. Given these circumstances, Mr. Hines requests that he be transferred to general population so his medical condition can be addressed promptly. *Id*. Because Mr. Hines has alleged he is in imminent danger, his amended motion for a preliminary injunction will be taken under advisement and Warden Neal will be ordered to respond to the motion.

For these reasons, the court:

(1) TAKES UNDER ADVISEMENT Cornelius LeMont Hines's amended motion for a preliminary injunction (ECF 10);

(2) DENIES AS MOOT Cornelius LeMont Hines's motions for a preliminary injunction (ECF 3, 4, 11);

(3) DISMISSES all other claims;

(4) DISMISSES Sgt. M. Alicea, Sg. D. Bass, D. Hawkins, Health Services Administrator Sherri Fritter, Dr. Nancy Marthakis, Director of Nursing Lacy Gorske, and Nurse Practitioner Diane Thew;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Warden Ron Neal at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1-1);

(6) DIRECTS the clerk to fax or email the same documents to Warden Ron Neal at the Indiana State Prison;

(7) ORDERS Warden Ron Neal to respond to the amended motion for a preliminary injunction (ECF 10) and provide a sworn declaration or affidavit with supporting medical documentation as necessary by **July 22, 2022,** explaining how the chronic seizure disorder of Cornelius LeMont Hines, IDOC # 197063, is being addressed in a manner that complies with the Eighth Amendment; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden Ron Neal to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

9

SO ORDERED.

July 1, 2022                                                       *s/ Damon R. Leichty*
                                                                   Judge, United States District Court